**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

```
                               :
RODNEY ROBINSON,               :
                               :    Civil No. 08-2340 (NLH)
              Petitioner,      :
                               :
         v.                    :
                               :       OPINION
WARDEN GRONDOLSKY,             :
                               :
              Respondent.      :
                               :
```

**APPEARANCES:**

```
    RODNEY ROBINSON, Petitioner pro se
    #36516-083
    F.C.I. Fort Dix
    P.O. Box 38
    Fort Dix, New Jersey 08640

    CHRISTOPHER J. CHRISTIE, United States Attorney
    IRENE E. DOWDY, Assistant U.S. Attorney
    Office of the U.S. Attorney
    401 Market Street, Fourth Floor
    P.O. Box 2098
    Camden, New Jersey  08101
    Attorneys for Respondent
```

**HILLMAN, District Judge**

Petitioner, Rodney Robinson ("Robinson"), a federal prisoner confined at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Robinson names Warden Grondolsky, the Warden at FCI Fort Dix where petitioner is confined, as the party respondent in this action.

On July 3, 2008, the Government submitted a response to the petition.  This Court has reviewed the written submissions of the parties, and for the reasons stated below, the Court will deny the petition for lack of merit.

## I.   BACKGROUND

The following facts are taken from the petition, responsive brief, and the relevant record submitted by the Government. Petitioner was sentenced to a 48-month prison term to be followed by an eight-year term of supervised release based on his 2001 federal conviction in the United States District Court for the Western District of Virginia, on charges of conspiracy to possess with the intent to distribute cocaine base, in violation of 21 U.S.C. § 846.  Robinson was released on May 14, 2004, pursuant to good conduct time (GCT) release.

On September 7, 2006, the United States District Court for the Eastern District of Virginia revoked Robinson's supervised release and ordered that he serve 42 months in prison. Robinson's current projected release date is March 1, 2009, pursuant to Substance Abuse Treatment Release under 28 U.S.C. § 3621(e).

On August 13, 2007, Robinson began to participate in the United States Bureau of Prisons' ("BOP") residential drug and alcohol abuse program ("RDAP") at FCI Fort Dix.  He completed the 500-hour RDAP on May 16, 2008.  Prior to his completion of the

RDAP, in March 2008, Robinson's unit team at FCI Fort Dix recommended that Robinson be granted community based residential placement on or about May 28, 2008.  At that time, Robinson's projected release date, after computing GCT, was set for September 14, 2009.  The Warden at FCI Fort Dix approved the unit team's recommendation on March 21, 2008.

Robinson's release-from-custody destination was Richmond, Virginia.  Accordingly, Robinson's referral packet for community-based placement was sent to a Community Corrections Manager ("CCM") in Maryland who deals with placement in the geographical region including Virginia, Maryland, and parts of North Carolina.  The CCM's office initially assigned a CCC/RRC[1] placement date of November 17, 2008, at a CCC/RRC facility in Richmond, Virginia.  This November date was the result of the extremely limited number of bed spaces in CCC/RRCs in that geographical area at that time.  Robinson's Case Manager at FCI Fort Dix e-mailed the CCM in Maryland to inquire as to an earlier referral date because Robinson was a RDAP participant who was eligible for early release consideration.  The CCM office informed Robinson's Case Manager that the November date was the earliest available in Robinson's destination area.

---

[1] CCC refers to community corrections center.  RRC refer to residential reentry centers.

3

Robinson's unit team at FCI Fort Dix asked Robinson if there was an alternative release address he could provide to enable the team to find another CCC/RRC with an earlier placement date than November 2008. Robinson gave the unit team his mother's address in North Carolina, and on May 14, 2008, the unit team sent the address to the CCM's office in the North Carolina area to inquire as to an earlier CCC/RRC placement date. The CCM office provided a placement date of September 3, 2008, to continue for 180 days thereafter, at a CCC/RRC in North Carolina.

Accordingly, Robinson's projected release date was recalculated from September 14, 2009 to March 1, 2009, based upon Robinson's anticipated satisfactory completion of his community-based transitional drug treatment services at the CCC/RRC in North Carolina. This constitutes a six-month early release.

However, in his habeas petition, Robinson asserts that the Warden and Unit Team members at FCI Fort Dix denied him the benefits of a community based halfway house placement within the surrounding area of Virginia, after he completed the RDAP program, a residential drug and alcohol abuse program. Robinson claims that he was eligible for halfway house placement on May 28, 2008. He was informed by the Warden that there was no space for him at the halfway house in Richmond, Virginia. Accordingly, Robinson contends that he should have been allowed home confinement instead of a CCC/RRC facility. Robinson further

argues that exhaustion of administrative remedies would be futile in his case because his release date is March 2009.

Respondent counters that Robinson failed to exhaust his administrative remedies before pursuing this claim in federal court.  Respondent also contends that Robinson received a halfway house placement date and has received all process to which he is constitutionally due with respect to his placement in a halfway house.

## II.   ANALYSIS

A.   Standard of Review

The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989).  Because Blow is proceeding pro se in his application for habeas relief, the Court will accord his petition the liberal construction intended for pro se litigants.

B.   An Overview of the RDAP

The Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA") amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner

the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible inmates, subject to the availability of appropriations. 18 U.S.C. § 3621(e)(1). An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(I) and (ii). As an incentive for the successful completion of the residential treatment program, the BOP **may**, in its discretion reduce an inmate's sentence by up to one year. 18 U.S.C. § 3621(e)(2)(B); see also Lopez v. Davis, 531 U.S. 230 (2001); McLean v. Crabtree, 173 F.3d 1176, 1182-84 (9th Cir. 1999), cert. denied, 528 U.S. 1086 (2000).

The incentive provision of the statute reads, in pertinent part:

> The period a prisoner convicted of a **nonviolent offense** remains in custody after successfully completing a treatment program **may** be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B). (Emphasis added).

The BOP has promulgated regulations at 28 C.F.R. § 550.56 to implement the statutory requirement. According to the regulations, in order to be considered for a residential treatment program, an inmate must have a verifiable drug abuse

problem, must have no serious mental impairment which would substantially interfere with or preclude full participation in the program, must sign an agreement acknowledging his program responsibility, and must ordinarily be within 36 months of release and the security level of the residential program institution must be appropriate for the inmate.  28 U.S.C. § 550.56(a).  Participation in the program is voluntary, but all decisions on placement are made by the drug abuse treatment coordinator.  See 28 C.F.R. § 550.56(b).  The application of § 550.56 is set forth in BOP Program Statement 5330.10.[2]

On December 22, 2000, the BOP revised the implementing regulation, with little change, as follows:

> Consideration for early release.
>> An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.
>> (a) Additional early release criteria.

---

[2] Program Statement 5330.10 defines the RDAP as consisting of three components: (1) a 500-hour minimum unit-based residential program; (2) an institution transition phase, which requires participation for a minimum of one hour a month over a period of 12 months after successfully completing the unit-based program; and (3) a community transitional services program where the inmate is transferred to a halfway house or home confinement for a period lasting up to six months.  Successful completion of the RDAP occurs upon successful completion of each of these three components of the RDAP.  See 28 C.F.R. §§ 550.56, 550.59.

>       (1) As an exercise of the discretion vested in the
>       Director of the Federal Bureau of Prisons, the
>       following categories of inmates are not eligible for
>       early release:
>       . . .
>       (vi) Inmates whose current offense is a felony:
>       . . .
>       (B) That involved the carrying, possession, or use of a
>       firearm or other dangerous weapon or explosives
>       (including any explosive material or explosive device),
>       ...

5 U.S.C. § 550.58 (2000). The regulation has remained unchanged since 2000. See also BOP Program Statements 5330.10, *Drug Abuse Programs Manual – Inmate* (1997), and 5162.04, § 7, *Categorization of Offenses* (1997)("All offenses under 18 U.S.C. § 922(g) shall preclude an inmate from receiving certain Bureau program benefits.").

C.   Pre-Release Custody

Section 3624(c) of Title 18 of the United States Code provides for the pre-release custody of an inmate, regardless of whether the prisoner has participate in an RDAP or similar drug abuse treatment program. Specifically, § 3624(c) reads:

> The Bureau of Prisons shall, to the extent practicable,
> assure that a prisoner serving a term of imprisonment spends
> a reasonable part, not to exceed six months, of the last 10
> per centum of the term to be served under conditions that
> will afford the prisoner a reasonable opportunity to adjust
> to and prepare for the prisoner's re-entry into the
> community. The authority provided by this subsection may be
> used to place a prisoner in home confinement.

The BOP Program Statement ("PS") 7310.04 specifies the procedures for an inmate's eligibility for pre-release custody, i.e., referral for community-based programs. Community-based

programs are generally known as halfway houses, or community corrections centers ("CCC").  Since March 2006, the BOP has referred to these facilities as residential reentry centers (RRC).  Under PS 7310.04, eleven to fourteen months before an inmate's projected release date, an inmate's unit team determines an inmate's suitability and length of time for CCC/RRC placement based on the inmate's transitional needs and individual circumstances.  PS 7310.04 §§ 8.c, 12.  The unit team prepares a referral packet with a recommended CCC/RRC placement date, which is then reviewed by the Inmate Systems Manager, the Case Management Coordinator, the Associate Warden of Programs, the Executive Assistant and the Warden.  Once the Warden approves the recommendation, the referral packet is sent to the appropriate Community Corrections Manager ("CCM") who supervises the CCC/RRCs in the geographical region near the inmate's release destination.  The CCM will assign a CCC/RRC facility willing to accept the inmate subject to available bed space for the placement period in question.  PS 7310.04 § 12.

D.  Exhaustion of Administrative Remedies

As an initial matter, this Court notes that petitioner did not fully exhaust his administrative remedies before filing this habeas petition.  Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. §

2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.[3]  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required

---

[3] To exhaust administrative remedies before the Federal Bureau of Prisons, a federal inmate seeking review of an aspect of his confinement must first seek to resolve the dispute informally.  See 28 C.F.R. § 542.13.  If the inmate does not receive a favorable termination, he may submit a formal written Administrative Remedy Request for response by the warden of the facility.  See 28 C.F.R. § 542.14.  If the inmate is not satisfied with the warden's response, he may appeal the warden's decision to the Regional Director within 20 days of the date of the decision.  If he is not satisfied with the Regional Director's response, he may submit an appeal of the Regional Director's decision to the Central Office within 30 days of the date of the decision.  See C.F.R. § 542.15.  If these responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

    In Snisky v. Pugh, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit. See 974 F. Supp. 817, 819 (M.D. Pa. 1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998). The court recognized that exhaustion could be excused where it would be futile. See id. In Snisky, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial. Thus, the court addressed the claims on the merits.

    Likewise, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing Snisky, 974 F. Supp. at 819-20). Further, the court held that the petitioner's

11

claim was clearly without merit, so that the exhaustion issue need not be reached. See id. See also Fraley v. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

Here, this Court notes that petitioner has an imminent release date that would make full exhaustion in this case futile. Therefore, this Court will review the merits of Robinson's petition rather than dismiss it on this procedural ground.

E.  Petitioner Was Not Denied Any Due Process as Alleged

This Court finds that, contrary to petitioner's assertions, Robinson received all the process due him with regard to his CCC/RRC placement and early release consideration.  First, and foremost, Robinson was granted CCC/RRC placement well before his initial projected release date of September 14, 2009.  The record demonstrates that when bed space at a CCC/RRC facility near petitioner's release destination was not available until November 2008, Robinson's unit team at FCI Fort Dix and the regional CCM office made every reasonable effort to secure Robinson the earliest placement date possible for a CCC/RRC in a suitable geographic area, namely, the alternative release destination given by petitioner as his mother's address in North Carolina.

12

Thus, Robinson was scheduled for CCC/RRC placement on September 3, 2008.

In addition, based on his referral for CCC/RRC placement, Robinson was approved for an earlier release date, from September 14, 2009 to March 1, 2009.  Thus, Robinson received all that he was entitled and due with respect to federal statutory law governing transitional placement before release and eligibility for early release consideration upon completion of an RDAP program.

Robinson mistakenly asserts that he was entitled to halfway house placement on May 28, 2008 in the Virginia area, after he completed the institutional portion of the RDAP program.  He also wrongly contends that in lieu of an available CCC/RRC facility for placement, he should have been allowed home confinement at that time.  This Court finds that respondents rightly point out that May 28, 2008 was merely the date on which petitioner was recommended for CCC/RRC placement.  However, it is the responsibility of the Regional CCM to find a suitable CCC/RRC facility for placement, and this was done as expeditiously as possible given the limited bed space available in the petitioner's release destination area.

Moreover, the discretionary early release provisions under 18 U.S.C. § 3621(e) were scrupulously followed in this instance. Robinson was given a projected release date six months earlier than that initially determined based on his anticipated completion of the RDAP program and his 180-day period of CCC/RRC

13

placement in September 2008. Therefore, this habeas petition will be denied for lack of merit.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's claim challenging the alleged delay in his halfway house placement and eventual early release will be denied. An appropriate order follows.

                                          s/Noel L. Hillman
                                          NOEL L. HILLMAN
                                          United States District Judge

Dated: January 30, 2009
At Camden, New Jersey